**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDREW R. PERRONG**<br>1657 The Fairway #131 Jenkintown, PA 19046<br><br>**Plaintiff,**<br>vs.<br><br>**Washington Investment Group LLC**<br>**d.b.a. "123EASYHOMESALE"**<br>**325 CHESTNUT ST , SUITE 800**<br>**PHILADELPHIA, PA 19106,**<br><br>**STEVEN JAMES WASHINGTON,**<br>**Individually and as Principal of WIG,**<br>**1008 QUAIL RUN,**<br>**CAMDEN, DE 19934,**<br><br>**And**<br>**DOES 1 through 100, inclusive,**<br><br>**Defendants.** | Civil Action<br>No.___**18**___**1934**<br><br><br><br><br><br><br><br><br><br><br><br><br>**Jury Trial Demanded** |

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution,

reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and

injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64

for the *ultra vires* illegal actions and deliberate and knowing tortious activity of WASHINGTON

INVESTMENT GROUP LLC ("WIG"), STEVEN JAMES WASHINGTON, Individually and as

Principal of WIG ("WASHINGTON"), and Does 1 through 100, inclusive, in negligently and/or

willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by

utilization of an automatic telephone dialing system ("ATDS Calls") and call abandonment in

violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims

1

that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.     Introduction

1.  Defendant WASHINGTON INVESTMENT GROUP LLC ("WIG") is a company located and domestically incorporated in the State of Pennsylvania, with a concurrent (improper) domestic incorporation in the State of Delaware that markets and sells, *inter alia,* home buying, purchasing, and investment services to individuals throughout Pennsylvania and other states in the US. WIG does business under the name 123EASYHOMESALE. Its principal mailing address is located at 325 Chestnut St, Suite 800 PHILADELPHIA, PA 19106. WIG also has an alternate address at 4023 Kennett Pike Unit #51333 Wilmington, Delaware 19807.

2.  Plaintiff brings this action to challenge the Company's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Company's and Company's agents' illegal telephone solicitations by which it markets its products and services, illegal Calls made using an automatic telephone dialing system, illegal call abandonment, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3.  All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern.

## Jurisdiction and Venue

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County, which lies within this judicial district,

2

pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent... ; it occurred when the [facsimile] was received."

## II.    Parties

6.    Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

7.    Defendant WASHINGTON INVESTMENT GROUP LLC ("WIG"), is a company located in Pennsylvania and Delaware, and transacts business in, *inter alia*, Montgomery County. WIG markets and sells, *inter alia*, home buying, purchasing, and investment services to individuals throughout Pennsylvania and other states in the US. WIG does business under the name 123EASYHOMESALE. Its principal mailing address is located at 325 Chestnut St, Suite 800 PHILADELPHIA, PA 19106. WIG also has an alternate address at 4023 Kennett Pike Unit #51333 Wilmington, Delaware 19807.

8.    Defendant STEVEN JAMES WASHINGTON ("WASHINGTON") is an adult individual who is the Primary Owner of WIG, and upon information and belief WIG's Primary Owner. WASHINGTON is an adult individual, and citizen of the United States. As Principal of WIG, WASHINGTON is the primary individual who reaps the benefit of the tortious and illegal

3

conduct described herein that is technically carried out only in Companies' name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Delaware, Pennsylvania, and nationwide.

9. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

10. At all times herein mentioned, WIG, WASHINGTON, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

11. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

4

13. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

14. Under the TCPA, an individual such as WASHINGTON may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

15. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g*., Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

16. Defendant WASHINGTON is personally liable under the "participation theory" of liability because he is the Principal owner and controlling officer of WIG, knew of Company's violations, and directed employees and/or agents of Company to continue making those violations. In fact, Company's agents used Defendant WASHINGTON'S name in their telephone calls, and indicated that such telemarketing calls were made at the behest of Defendant WASHINGTON. This is because WASHINGTON authorized and oversaw each of Company's

5

telemarketing processes. Furthermore, WASHINGTON is personally liable because he is responsible for ensuring Company's employees' TCPA compliance.

## III.   Factual Allegations

17. In or about May 3rd , 2018, Plaintiff received the first of multiple calls made using an automatic telephone dialing system ("ATDS") by Defendants and/or their agents at Plaintiff's personal telephone number, 215-947-1920, for which he is charged for the call under a package calling arrangement. Plaintiff had not consented to this solicitation, and Plaintiff's telephone number was on the Federal Do-Not-Call Registry.

18. This call, received at 10:40 AM, was answered by Plaintiff with "Hello," however, Plaintiff only heard a click, machine noise, and a disconnection, all characteristics of an automatic dialer. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call, in addition to the reasons previously mentioned. During this call, Plaintiff said "Hello" several times and was connected for a total of 7 seconds.

19. This call, as well as subsequent calls, bore the caller ID 610-813-6095, and the caller ID Name, "123EASYHOMESALE" – an unregistered DBA name for Washington Investment Group, LLC, see eg https://twitter.com/123easyhomesale archived at https://archive.is/V8AYp, or https://www.facebook.com/Washington-Investment-Group-LLC-238534826187231/, archived at https://archive.is/rhXvA.

20. Plaintiff received another call at 10:42 AM on May 3rd. During that Call, Plaintiff answered "Hello" and waited a few seconds, hearing a machine noise and clicking, before he spoke to "LJ" from "Washington Investment Group" regarding a property owned by Plaintiff's

6

parents on Afton Street in Philadelphia. The caller attempted to mislead Plaintiff into thinking that they were trying to reach the owner of the property with a sense of urgency in order to trick Plaintiff into remaining on the line, when, in reality, they were attempting to make an offer to purchase the property.

21. The caller stated that he was calling from Defendant "STEVEN WASHINGTON'S Real Estate Office" and was wondering if they could make an offer purchase the property owned by Plaintiff's parents on Afton Street, which Plaintiff's parents own as an investment property.

22. Plaintiff subsequently called the number, 610-813-6095, back to ask to be placed on Defendant's Do-Not-Call list and receive a copy of Defendant's Do-Not-Call policy, and was assured that he would be, but never got a copy of Defendant's Do-Not-Call policy as of the date of the filing of this complaint. Plaintiff assumes, based on this failure, that Defendant did not place Plaintiff's number on their Do-Not-Call list as requested.

23. As more fully outlined above, Defendants refused to place Plaintiff on their Do-Not-Call list or provide Plaintiff a copy of their Do-Not-Call policy. It is reasonable for Plaintiff to assume, based on these refusals, that Defendants evidently do not have such lists or policies, due to their failure to honor such requests not to be contacted.

24. Plaintiff received the calls on his private telephone, for which he is charged for the call, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

25. These facts of call abandonment, delayed responses, machine noise, clicking, the geographic distance between the Plaintiff and the Defendants, as well as the fact that this call was part of a broad-ranging telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

7

26. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ... to any telephone number assigned to... any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). As stated immediately above, the calls were placed using an automatic telephone dialing system to Plaintiff's private telephone line, on which he is charged for the call under a package arrangement.

27. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

28. The action of terminating a call made by automatic "robodialers," or calls placed using an automatic telephone dialing system, before the called party answers the call, is termed as "call abandonment" and is highly illegal. 47 CFR 64.1200(a)(7) states that it is illegal to "Abandon more than three percent of all telemarketing calls that are answered live by a person" and states that "A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." In such a case, 47 CFR 64.1200(a)(7)(i)(A) indicates that abandoned calls must provide, among other requirements, "A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed."

29. As stated above, the abandoned calls did not provide the identification information required under 47 CFR 64.1200(a)(7)(i)(A). Moreover, 1 of the 2 calls, or 50%, that Plaintiff received were abandoned. This percentage is well in excess of the 3% overall "safe harbor" limit of 47 CFR 64.1200(a)(7), and the actual amount of abandoned calls in Company's illegal

8

telemarketing campaign is likely to be revealed to be much higher than the 3% limit upon discovery.

30. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up, he wasted energy and stress in answering a seemingly urgent call, his telephone batteries were depleted, he was charged for the calls, and his privacy was improperly invaded. Moreover, the calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

31. Plaintiff adequately confirmed corporate identity for each and every call so as to establish liability of Defendants, as more fully outlined above.

32. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

33. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" or otherwise to transmit a message or make calls.

34. As a point of fact, to the extent that "consent" was supplied during the calls, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

35. Plaintiff had no prior business relationship with any one, more, or all of Defendants.

36. The telephone Sales Call therefore violated 47 U.S.C. § 227(b)(1)(A), 47

U.S.C. § 227(c)(3)(F), 47 CFR 64.1200(a)(7), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47

CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## IV. Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

37. Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

38.  As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C.
§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every
violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

39. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting
such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

40. Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

41. As a result of Defendants' and Defendants' agents knowing and/or willful violations
of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute,
up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

42.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

43. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

44. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

45. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

46. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

47. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

48. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

11

**Fifth Cause of Action**

(Negligent Violation of the TCPA "Call Abandonment"
Prohibition, 47 CFR 64.1200(a)(7))

49. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

50. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR

64.1200(a)(7) Plaintiff seeks for himself $500 in statutory damages for each and every violation,

pursuant to the implied private right of action.

**Sixth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Call Abandonment" Prohibition, 47 CFR 64.1200(a)(7))

51. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

52. As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(a)(7), Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private right of action.

**Seventh Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

53. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

54. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation,

pursuant to the implied private right of action.

12

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

55. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

56. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Ninth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

57. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

58. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Tenth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

59. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

60. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

13

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

## V.    Prayer for Relief

On Causes of Action 1-10:

1.  For awards of $500 for each negligent violation as set forth in actions 1-10;

2.  For awards of $1,500 for each knowing/willful violation as set forth in actions 1-10.

3.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;
Total statutory damages: : **$13,500** (Two counts each of: sales call, ATDS call, failure to put
Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of
Defendants' Do-Not-Call policy, at $500 per count of each, with treble damages for each, plus 1
count of call abandonment at $500, with treble damages.)

4.  Punitive damages to punish Defendants for their willful, illegal, and deliberate
tortious conduct and to deter others who may otherwise engage in similar willful illegal and
deliberate tortious conduct;

5.  Prejudgment interest at the maximum legal rate;

6.  Costs of suit herein incurred; and

7.  All such other and further relief as the Court deems proper.

14

## VI.    **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated: **May 8, 2018**


_/s/_____
                                             Andrew Perrong
                                             *Plaintiff Pro-Se*
                                             1657 The Fairway #131
                                             Jenkintown, PA 19046
                                             Phone: 215-791-6957
                                             Facsimile: 888-329-0305
                                             andyperrong@gmail.com

15